JOHN R. GIBSON, Circuit Judge,
concurring and dissenting.
I concur in the court’s opinion to the extent that it holds that the payments by the party to the candidates were contributions and not expenditures. The candidates’ freedom to spend the money as they saw fit requires that the money passed to them be characterized as contributions as a matter of law.
I agree that the Supreme Court’s decisions in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per cu-riam), and Colorado Republican Federal Campaign Committee v. Federal Election Commission, 518 U.S. 604, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996), provide guidance. I differ, however, with the court’s conclusion that political party contributions are distinguishable from the situation presented in Buckley and with the court’s assertion that the recent decision in Nixon v. Shrink Missouri Government PAC, 528 U.S. 377, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000), is of limited value here.
Buckley developed the groundwork for analyzing the constitutionality of campaign finance laws, distinguishing between contributions and expenditures and concluding that contribution limits impose less severe restrictions on First Amendment rights than expenditure limits. See 424 U.S. at 19-23, 96 S.Ct. 612. In Shrink Missouri, the Court recognized this distinction in upholding Missouri’s limits on contributions made by any person. See 120 S .Ct. at 903-04. Significantly, five justices joined Justice Souter’s opinion for the Court. True, Shrink Missouri does not speak directly to issues involving political party contributions. It does, however, demonstrate the continuing vitality of Buckley, and it sets out the standard we must apply here.
The court today asserts that, because of the special nature of political parties, limits on their contributions are more burdensome than limits on Contributions by individuals. The court supports its determination that the First Amendment rights of political parties “are different from, and weightier than, those that were involved in Buckley ” with the novel conclusion that political parties and their candidates share a “virtual identity.” While the court asserts that parties and candidates have “observable differences” and that there is not always an exact correspondence between them, it goes on to describe the party/candidate relationship in a variety of ways: a party and its candidate are “virtually indistinguishable from each other” and are “virtual alter egos” whose “identities are merged in a way that makes dealings between them more than merely transient symbiotic ones between separate and distinct entities.” The court tergiversates as it reaches for a description of this relationship. Upon this shifting foundation, the court constructs its entire opinion.
There is no apparent consensus on the Supreme Court about the relationship between political parties and candidates. The Colorado Republican plurality (Justices Breyer, O’Connor, and Souter) rejected the argument that “a party and its candidate are identical, i.e., the party, in a sense, ‘is’ its candidates,” pointing out that Congress treats parties and candidates differently by regulating contributions from one to the other. 518 U.S. at 622-23, 116 S.Ct. 2309. Concurring and dissenting, *1075 Justice Kennedy, joined by Chief Justice Rehnquist and Justice Scalia, observed that there is “a constitutional tradition of political parties and their candidates engaging in joint First Amendment activity,” along with “a practical identity of interests” between the two during an election. Id. at 630, 116 S.Ct. 2309. Justice Thomas, also concurring and dissenting and also joined by Chief Justice Rehnquist and Justice Scalia, argued that a political party could not corrupt its candidate because the party’s “very aim ... is to influence its candidate’s stance on issues and, if the candidate takes office or is reelected, his votes .” Id. at 646, 116 S.Ct. 2309. Justice Stevens, joined by Justice Ginsburg, stated in dissent:
A party shares a unique' relationship with the candidate it sponsors because their political fates are inextricably linked. That interdependency creates a special danger that the party — or the persons who control the party — will abuse the influence it has over the candidate by virtue of its power to spend.
Id. at 648, 116 S.Ct. 2309. The various expressions articulated by the court today come closest to Justice Kennedy’s observations, but his conclusion that a party and its candidates engage in joint activity and share interests falls short of the court’s conclusion that they are virtually identical, virtual alter egos, or in some way merged.
Regardless of the nature of the relationship, party contributions to candidates can be regulated. Although Buckley upheld limits on contributions by individuals and political committees, not political parties, its analysis was framed in a way that leads to the conclusion that it applies to all contributions, no matter what their source. Buckley addressed the constitutionality of various restrictions on political contributions and expenditures contained in the Federal Election Campaign Act, an “intricate statutory scheme adopted by Congress ... that applfies] broadly to all phases of and all participants in the election process.” 424 U.S. at 12-13, 96 S.Ct. 612 (emphasis added). The Court discussed contribution and expenditure limits in a section of its opinion entitled “General Principles,” id. at 14, 96 S.Ct. 612, preceding any discussion of the specific provisions at issue in the case. This placement indicates that the Court intended to set forth universally applicable precepts. Also telling is the fact that the Court discussed expenditure limits on political parties immediately before contrasting expenditure limits with contribution limits:
The expenditure limitations contained in the Act represent substantial rather than merely theoretical restraints on the quantity and diversity of political speech. The $1,000 ceiling on spending “relative to a clearly identified candidate,” 18 U.S.C. § 608(e)(1) (1970 ed., Supp. IV), would appear to exclude all citizens and groups except candidates, political parties, and the institutional press from any significant use of the most effective modes of communication. Although the Act’s limitations on expenditures by campaign organizations and political parties provide substantially greater room for discussion and debate, they would have required restrictions in the scope of a number of past congressional and Presidential campaigns and would operate to constrain campaigning by candidates who raise sums in excess of the spending ceiling.
By contrast- with a limitation upon expenditures for political expression, a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor’s ability to engage in free communication.
Id. at 19-21, 96 S.Ct. 612 (footnotes omitted). The order of the Court’s argument suggests that its discussion of contribution limits is fully applicable to limits on political parties.
Colorado Republican provides further support for the conclusion that Buckley’s analysis applies here. The plurality held that the First Amendment prohibited applying the Federal Election Campaign *1076 Act’s limit on political party expenditures to “an expenditure that the political party has made independently, without coordination with any candidate.” Colorado Republican, 518 U.S. at 608, 116 S.Ct. 2309. The opinion stressed the constitutional difference between contributions and expenditures that originated in Buckley. See id. at 614-15, 116 S.Ct. 2309. The plurality’s emphasis on the “constitutionally significant fact” that the party acted independently, id. at 617, 116 S.Ct. 2309, demonstrates an assumption that limits on coordinated expenditures by political parties, which are treated as contributions under the Act, would be more likely to withstand constitutional scrutiny. Cf. California Democratic Party v. Jones, _ U.S. _, _, 120 S.Ct. 2402, 2415, 147 L.Ed.2d 502 (2000) (Kennedy, J., concurring) (five members of the Supreme Court “subscribe to the position that Congress or a State may limit the amount a political party spends in direct collaboration with its preferred candidate for elected office .”).
It is thus evident that the constitutional distinction between contributions and expenditures applies to political party money. The free speech rights of parties are not greater than the free speech rights of individuals and political committees. Speech, after all, is speech, whether expressed by one or by a group formed to convey a common viewpoint. Limits on party contributions are subject to the same level of scrutiny as limits on individual and political committee contributions.
The contribution limits at issue should be upheld if they are closely drawn to meet a sufficiently important interest. See Shrink Mo., 120 S.Ct. at 904. The court relies on what it perceives to be the lack of a sufficiently important interest to hold that the limits are unconstitutional. The court doubts that a political party can corrupt its own candidate, but Missouri does not justify its limits on that ground. Instead, it explains that the limits deter evasion of individual contribution limits.[1]
A plurality of the Supreme Court upheld limits on contributions to multicandidate political committees because the limits furthered the interest of preventing actual or apparent corruption by limiting “circumvention of the very limitations on contributions that this Court upheld in Buckley.” California Medical Ass’n v. Federal Election Comm’n, 453 U.S. 182, 197-98, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981). Writing separately, Justice Blaekmun also concluded “that contributions to multicandi-date political committees may be limited ... as a means of preventing evasion of the limitations on contributions to a candidate or his authorized campaign committee upheld in Buckley.” Id. at 203, 101 S.Ct. 2712. See also Buckley, 424 U.S. at 38, 96 S.Ct. 612 (upholding a $25,000 overall limit on total contributions made by an individual because it acted to prevent evasion of the $1000 limit on contributions to a particular candidate that the Court held constitutional).
Missouri’s justification for the party contribution limits is neither novel nor implausible: in both Buckley and California Medical, the Supreme Court accepted preventing evasion of a constitutional limit as a sufficiently important governmental interest. The court’s insistence on evidence to support this justification runs counter to these decisions and 'to the Shrink Missouri decision, which held that Missouri’s individual limits are justified by its important interest in preventing corruption and the appearance of corruption. See 120 S.Ct. at 905-08. If there is sufficient evidence to support individual contribution *1077 limits enacted to prevent corruption or the appearance of corruption, it logically follows that there is sufficient evidence to support a contribution limit enacted to prevent evasion of the individual limits.
The court relies on its conclusion that political parties have different and more important free speech rights than individuals to discount Missouri’s interest in deterring evasion of its individual contribution limits. Because contributions made by a political party are no different than contributions made by individuals or other groups, this reliance is unfounded.
The remaining issue is whether the limits are closely drawn to meet the government’s interest. Under Shrink Missouri, a contribution limit will stand unless it is “so radical in effect as to render political association ineffective, drive the sound of a candidate’s voice below the level of notice, and render contributions pointless.” Id. at 909. There is no evidence in the record to support a conclusion that Missouri’s limits on political party contributions have created such “a system of suppressed political advocacy.” Id. Because Missouri’s limits on cash contributions that a party may make to a candidate are closely’drawn to meet a sufficiently important.governmental interest, they do not violate the First Amendment.
I would affirm the district court’s judgment.[2]

. Missouri also briefly argues that the party limits address the public's perception of corruption that occurs when large contributions are made to political parties, political parties make large contributions to candidates, and the candidates’ decisions mirror the large contributors’ positions. This is a variation on ■ the evasion argument.' That.is, an appearance of corruption may arise if individuals can evade contribution limits by using a political party as a conduit.

. The court holds that the limits on in-kind contributions offend the First Amendment, an issue not passed upon by the district court. Under my analysis, the in-kind limits are constitutionally valid.